IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------X

CHRISTINE M. TAYLOR and
CHRISTINA KLEIN,

                                      COURT FILE NO. 1:16-cv-4685-LGS

               Plaintiff,

v.

FINANCIAL RECOVERY SERVICES, INC.,

               Defendant.

--------------------------------------------------------X

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS OR ALTERNATIVELY FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

I.      INTRODUCTION ............................................................................................. 1

II.     PROCEDURAL POSTURE ............................................................................. 1

III.    FACTS .............................................................................................................. 1

   A.   Factual History As To Plaintiff Taylor ..................................................... 1

   B.   Factual History As To Plaintiff Klein ....................................................... 2

   C.   Complaint Allegations ............................................................................... 3

   D.   Separate Complaint Allegations as to Plaintiff Taylor ............................. 4

   E.   Damages Alleged By The Plaintiffs .......................................................... 5

   F.   Damages Alleged By Plaintiff Taylor As A Result Of The Tax Statement ....................... 5

   G.   FDCPA Sections ........................................................................................ 6

IV.     APPLICABLE LEGAL STANDARDS ........................................................... 7

   A.   Article III Standing ................................................................................... 7

   B.   Summary Judgment ................................................................................... 8

V.      LEGAL ARGUMENT ..................................................................................... 9

   A.   Plaintiffs Lack Standing Because They Have Not Suffered a "Concrete" Injury-In-Fact . 9

   B.   Plaintiff Klein Cannot Prosecute Her Claims Because She Did Not Adequately Disclose
        The Lawsuit Against FRS in Her Bankruptcy Proceeding ................................. 12

        1.   Standing Considerations in Bankruptcy Proceedings ................................. 12

        2.   Klein Did Not Properly Disclose A Cause of Action Against FRS in Her Bankruptcy
             Schedules ........................................................................................ 14

        3.   Klein is Judicially Estopped From Asserting Claims Against FRS ............................. 16

   C.   FRS Is Not Required To Include A Statement Regarding Interest Where None Is
        Accruing On The Account .............................................................................. 17

   D.   Inclusion of the True and Accurate Tax Statement in Taylor's Letter Did Not Violate the
        FDCPA .................................................................................................... 21

        1.   The Tax Statement is True and Accurate ........................................................ 21

        2.   The Letter is Not Deceptive or Misleading ..................................................... 23

VI.     CONCLUSION ................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Arana*,
    456 B.R. 161 (Bankr. E.D.N.Y. 2011) ............................................................................13, 14

*Avila v. Riexinger & Associates, LLC*,
    817 F.3d 72 (2d Cir. 2016) ..................................................................................18, 19, 20

*Balon v. Enhanced Recovery Co., Inc.*,
    No. 3:16-CV-0410, 2016 WL 3156064 (M.D. Pa. June 2, 2016) ...........................24

*Barris v. Midland Funding LLC*,
    No. 14-cv-6469, 2015 WL 519176 (D.N.J. Feb. 9, 2015) ......................................14

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .................................................................................................8

*Chartschlaa v. Nationwide Mut. Ins. Co.*,
    538 F.3d 116 (2d Cir.2008) ...............................................................................13, 14

*Chertkova v. Connecticut Gen. Life Ins. Co.*,
    92 F.3d 81 (2d Cir. 1996) ........................................................................................8

*Coffaro v. Crespo*,
    721 F.Supp.2d 141 (E.D.N.Y. 2010) .................................................................13, 17

*In re Colvin*,
    288 B.R. 477 (Bankr. E.D. Mich. 2003) ...............................................................12

*Cozzi v. C.I.R.*,
    88 T.C. 435 (1987) ................................................................................................21

*Cusano v. Klein*,
    264 F.3d 936 (9th Cir. 2001) ...............................................................................12

*Davis v. State of New York*,
    316 F.3d 93 (2d Cir. 2002) .....................................................................................8

*Dick v. Enhanced Recovery Co., LLC*,
    No. 15CV2631RRMSMG, 2016 WL 5678556 (E.D.N.Y. Sept. 28, 2016) ....................19, 20

*In re Dionisio*,
    2003 U.S.App. LEXIS 12432 (3d Cir. 2003) .......................................................14

*Durkin v. Equifax Check Servs.*,
  406 F.3d 410 (7th Cir. 2005) ........................................................................24

*Gabriele v. Am. Home Mortg. Serv., Inc.*,
  503 Fed.Appx. 89 (2d Cir. 2012) ...................................................................19

*Good v. Nationwide Credit, Inc.*,
  55 F.Supp (E.D. Pa. 2014) .............................................................................24

*Gottlieb v. Cnty. of Orange*,
  84 F.3d 511 (2d Cir.1996)................................................................................8

*Herrick Co. v. SCS Commc'ns, Inc.*,
  251 F.3d 315 (2d Cir. 2001)..............................................................................7

*Hopkins v. Foothill Mountain, Inc. (In re Hopkins)*,
  346 B.R. 294 (Bankr. E.D.N.Y. 2006)...........................................................13

*Jackson v. Abendroth & Russell, P.C.*,
  No. 416CV00113, —— F.Supp.3d ——, 2016 WL 4942074 (S.D. Iowa Sept.
  12, 2016) ........................................................................................................11

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*,
  337 F.3d 314 (3d Cir. 2003)...........................................................................15

*Kulak v. City of New York*,
  88 F.3d 63 (2d Cir. 1996)..................................................................................8

*Lopez v. Specialty Rests. Corp*,
  283 B.R. 22 (9th Cir. BAP 2002).....................................................................13

*In re Lowery*,
  398 B.R. 512 (Bankr. E.D.N.Y. 2008).............................................................12

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992).......................................................................................7, 8

*McNamra v. City of Chicago*,
  138 F.3d 1219,1221 (7th Cir. 1998) ...............................................................11

*In re Mohring*,
  142 B.R. 389 (Bankr. E.D. Cal. 1992), *aff'd*, 153 B.R. 601 (B.A.P. 9th Cir.
  1993), *aff'd*, 24 F.3d 247 (9th Cir. 1994) .................................................14, 15

*Olvera v. Blitt & Gaines, P.C.*,
  431 F.3d 285 (7th Cir. 2005) .........................................................................24

iii

*Payne v. Wood*,
   775 F.2d 202 (7th Cir. 1985) ........................................................................................12, 15

*PepsiCo, Inc. v. CocaCola Co.*,
   315 F.3d 101 (2d Cir. 2002)..........................................................................................8

*Perry v. Village of Arlington Heights*,
   186 F.3d 826 (7th Cir.1999) .........................................................................................7

*Rhone v. AllianceOne Receivables Mgmt., Inc.*,
   No. 1:14-CV-02034-JMS, 2015 WL 4758786 (S.D. Ind. Aug. 12, 2015) .............................25

*Romeo v. FMA All., Ltd.*,
   No. 15CV6524ADSARL, 2016 WL 3647868 (E.D.N.Y. June 30, 2016)...................... *passim*

*Rosenshein v. Kleban*,
   918 F. Supp. 98 (S.D.N.Y. 1996) ..................................................................................17

*Spaine v. Community Contacts, Inc.*,
   756 F.3d 542 (7th Cir. 2014) ........................................................................................14

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016)..........................................................................................7, 9, 11

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998)....................................................................................................7, 9

*Stein v. United Artists Corp.*,
   691 F.2d 885 (9th Cir. 1982) ........................................................................................16

*Thomas v. Gaskill*,
   315 U.S. 442 (1942) ....................................................................................................7

*Tilley v. Anixter Inc.*,
   332 B.R. 501 (D. Conn. 2005) ................................................................................14, 15

*United States v. Kirby Lumber Co.*,
   284 U.S. 1 (1931)......................................................................................................21

*Warth v. Seldin*,
   422 U.S. 490 (1975)....................................................................................................7

*White v. Goodman*,
   200 F.3d 1016 (7th Cir. 2000) ......................................................................................24

*Wight v. BankAmerica Corp.*,
   219 F.3d 79 (2d Cir. 2000)......................................................................................16, 17

iv

*Wright v. Meyers & Spencer, LLP*,
  46 A.D.3d 805, 849 N.Y.S.2d 274 (N.Y. App. Div.2d Dep't 2007) ........................................13

*Zink v. First Niagara Bank, N.A.*,
  No. 13-CV-01076-RJA-JJM, 2016 WL 3950957 (W.D.N.Y. July 1, 2016) ............................7

**Statutes**

11 U.S.C. § 521(a)(1) ........................................................................................................13

11 U.S.C. § 541(a)(1) ........................................................................................................13

15 U.S.C. § 1692e, *et seq.* ...................................................................................... *passim*

26 U.S.C. § 61(a)(12) ...................................................................................................21, 25

26 U.S.C. §63(a) ...............................................................................................................21

26 U.S.C. § 6050P ...............................................................................................................4

**Other Authorities**

Bankruptcy Rule of Procedure 1007(b) ............................................................................13

Federal Rule of Civil Procedure 12(b)(1) ..................................................................12, 25

Federal Rule of Civil Procedure 56 ...............................................................................8, 25

IRS Publication Number 4681 .........................................................................................22

IRS Publication Number 4731 .........................................................................................23

IRS Publication Number 525 ...........................................................................................22

Local Civil Rule 33.3 ..............................................................................................5, 6, 10

United States Constitution Article III ........................................................................ *passim*

3357963v10

## I.   <u>INTRODUCTION</u>

Defendant Financial Recovery Services, Inc. ("FRS") respectfully submits this memorandum in support of its motion for summary judgment.   The claims set forth in the Amended Complaint ("Amended Complaint") filed by Plaintiffs Christine M. Taylor ("Taylor") and Christina Klein ("Klein") (collectively "Plaintiffs") fail invoke the Court's jurisdiction under Article III of the Constitution because neither Plaintiff alleges that she suffered a concrete injury-in-fact resulting from FRS' alleged violation of the Fair Debt Collection Practices Act ("FDCPA").. Additionally, the undisputed facts show that FRS is entitled to Summary Judgment because all of the claims alleged by the Plaintiffs fail as a matter of law.

## II.   <u>PROCEDURAL POSTURE</u>

Plaintiffs commenced this matter on June 20, 2016.   (Pl. Compl., Doc. No. 1.)   On August 16, 2016, FRS timely filed its answer (Def. Ans., Doc. No. 15) and Plaintiffs immediately filed an Amended Complaint (Pl. Am. Compl., Doc. No. 16.)   FRS then timely filed its answer to the Amended Complaint.   (Def. Ans. to Am. Compl., Doc. No. 19.)   FRS timely submits this Motion pursuant to the Court's Order.

## III.   <u>FACTS</u>

### A.   **Factual History As To Plaintiff Taylor**

Taylor incurred a credit card debt and subsequently fell behind on her payments. (Pl. Am. Compl at ¶¶ 11, 14). On March 7, 2016, the owner of the debt, First National Bank of Omaha ("FNBO"), referred the account to FRS for collection. (Affidavit of Brian Bowers ¶ 10).  At the time Taylor's account was placed with FRS, it was indicated that $599.98 was due and owing and that interest was not accruing.  (Bowers Aff., ¶ 11).  FRS proceeded to send three letters to Taylor; one dated March 8, 2016, one dated April 12, 2016, and one dated May 10, 2016. (*Id.*, ¶

1

12; Exs. G, H, I to Bowers Aff.).  FRS' March 8, 2016 letter advised Taylor that the balance due was $599.98 and that the amount due at charge-off was likewise $599.98.  (Bowers Aff. ¶ 12; Ex. G to Bowers Aff). Similarly, the April 12, 2016 and May 8, 2016 letters also listed $599.98 as the balance due.  (Bowers Aff. ¶ 12). FRS closed its file related to Taylor on May 20, 2016. (*Id.* ¶ 16).  At no time during which FRS had Taylor's file was any interest added to Taylor's account.  (*Id.* ¶¶ 14, 17).

On May 19, 2016, Taylor filed a voluntary Chapter 7 Bankruptcy Petition, United States Bankruptcy Court for the Eastern District of New York File Number 8-16-72233.  (*See* Ex. A to Affidavit of Michael Etmund). Taylor's bankruptcy schedule included a vague reference to "Possible Fair Debt Collection" valued at $4,000.00. (*Id.* at FRS000021 and 23). Taylor amended her bankruptcy schedules on August 2, 2016, to specifically include "FDCPA Actions including Taylor v. FRS, 1:16-cv-04685."  (*Id.* at FRS000025 and 27). On August 31, 2016, Taylor received a bankruptcy discharge. (*Id.* at FRS000028).

### B.    Factual History As To Plaintiff Klein

Klein incurred a debt to Barclays Bank Delaware ("Barclays").  (Affidavit of April Warrant-Schwing ¶ 2). The statement sent for the billing period ending September 26, 2014, indicates that the amount due and owing was $3,171.12 at that time. (Ex. A to Warrant-Schwing Aff.). On October 1, 2015, Barclay's placed Klein's account with FRS for collection. (Warrant-Schwing Aff. ¶ 3; Bowers Aff. ¶ 6).  At the time Klein's account was placed with FRS, it was represented that $3,171.12 was due and owing and that interest was not accruing.  (Warrant-Schwing Aff. ¶ 4; Bowers Aff., ¶ 4).  The $3,171.12 was the balance at the time of charge-off and consisted of interest that accrued prior to charge-off. (Warrant-Schwing Aff. ¶ 5). FRS proceeded to send four letters to Klein; one dated October 2, 2015, one dated November 3, 2015,

one dated December 3, 2015 and the last one dated January 27, 2016. (Bowers Aff. ¶ 5; Exs. B, C, D, E to Bowers Aff.).  FRS' October 2, 2015 letter advised Klein that the balance due was $3,171.12 and that the amount due at charge-off was likewise $3,171.12.  (*Id.*). Similarly, the following three letters all listed $3,171.12 as the balance owing.  (*Id.*). FRS closed its file related to Klein on April 6, 2016.  (*Id.* ¶ 9).  At no time during which FRS had Klein's file was any interest added to Klein's Account.  (*Id.* ¶ 7, 17; Warrant-Schwing Aff. ¶¶ 4-8)

Subsequent to receiving FRS' letter, on April 4, 2016, Klein filed a voluntary Chapter 7 Bankruptcy Petition, United States Bankruptcy Court for the Eastern District of New York File Number 8-16-71474.  (*See* Ex. B to Etmund Aff.).  Klein's bankruptcy schedule included a vague reference to "Possible FDCPA claims" valued at $1,000.00.  (*Id.* at FRS000030 and 31). On July 19, 2016, Plaintiff Klein received a bankruptcy discharge. (*Id.*at FRS000032).

## C.    Complaint Allegations

As a result of receiving letters from FRS—specifically the Klein letter dated November 3, 2015 and the Taylor letter dated April 12, 2016—Plaintiffs brought this matter. Plaintiffs allege that FRS violated the FDCPA because neither letter contained a statement regarding whether or not interest was being charged to either account. (Pl. Am. Compl. at ¶ 26).

Despite the fact that all letters to both Plaintiffs sought the same, static amount,  Plaintiffs claim that they were "unable to determine whether the amount of [the] debt was static, or whether such was subject to further interest and/or fees after the date of the notice." (*Id*. at 32 and 36). They allege that the letters are deceptive and misleading "because they can reasonably be read by the least sophisticated consumer to have two or more meanings, one of which is inaccurate." (*Id*. at 37). The Amended Complaint alleges that both the Taylor letter and the Klein letter "can reasonably be read by the least sophisticated consumer to mean that the 'balance due'

was static," (*Id*. at 39 and 43), or that the letters can also reasonably be read to mean that "the 'balance due' was subject to further interest and/or fees." (*Id*. at 40 and 44). The Amended Complaint does not provide any factual support or allegation regarding how or why such an interpretation may be made. (*See generally id*.) Nonetheless, Plaintiffs claim that FRS' letters violated 15 U.S.C. § 1692e because the letters "would render a least sophisticated consumer unable to determine whether the amount of the consumer's debt was static, or whether such was subject to further interest and/or fees after the date of the notice." (*Id*. at 49 and 52).

### D.     Separate Complaint Allegations as to Plaintiff Taylor

The letter dated April 12, 2016 that was sent to Taylor included three separate options to settle the debt for less than the full amount. (*See* Ex. 1 to Pl. Am. Compl.). Immediately below the three settlement offers, the letter included the following statement: "This Settlement may have tax consequences." (the "Tax Statement"). (*Id*.; *see also* Pl. Am. Compl at ¶ 62). The Amended Complaint claims that this statement would make a least sophisticated consumer reasonably believe that her acceptance of the settlement offers would have tax consequences. (*Id*. at ¶ 64). The Amended Complaint then specifically cites 26 U.S.C. § 6050P, which "requires any applicable entity discharging (in whole or part) any person's debt to make a Form 1099-C return setting forth certain information about the individual and the discharge, unless the discharge is for less than $600.00." (*Id*. at ¶ 65). It goes on to claim that the settlement offers in the April 12, 2016 letter could not possibly have been reportable. (*Id*. at ¶ 67). Thus, Taylor alleges that informing her that a settlement may have tax consequences violates the FDCPA. (*Id*. at ¶ 78).

Taylor alleges that the Tax Statement is a threat to take action that is not intended or legally allowed to be taken by FRS, and that FRS has reason to know no tax consequences will result from the settlement. (*Id*. at ¶69-72). Again, Plaintiffs do not provide any fact or allegation

4

as to how or why the letter contemplates any action will be taken by FRS, or indeed how the least sophisticated consumer could reasonably interpret the Tax statement as saying such. Nonetheless, Plaintiffs allege that a least sophisticated consumer could reasonably interpret the Tax Statement as "a threat that any settlement will be reported to the IRS," and that she "could get in trouble with the IRS for obtaining any debt forgiveness." (*Id*. at ¶¶ 74 and 77).Therefore, as a result of the April 12, 2016 letter's inclusion of the Tax Statement, Taylor alleges that FRS violated 15 U.S.C. § 1692e, § 1692e (2)(A), § 1692e (5), and § 1692e (10). (*Id*. at ¶ 78).

### E.     Damages Alleged By The Plaintiffs

Plaintiffs claim that as a result of the letters not containing any statement regarding interest they were unable to determine the amount of their debts, (*Id*. at ¶¶ 31 and 35), and that the lack of a statement regarding interest made Klein unable to determine the value of contacting FRS and Taylor was rendered unable to determine the value of the settlement offers. (*See id*. at ¶¶ 30& 34). Aside from these claims, the Amended Complaint is void of allegations regarding how FRS' failure to include a statement regarding interest caused either Plaintiff to be injured.

In an attempt to better assess the potential damages FRS sent interrogatories to each Plaintiff requesting that they specify any and all damages that they are claiming. (*See* Ex. C to Etmund Aff. at FRS000036, ¶¶ 7-8; and Ex. D to Etmund Aff. at FRS000048, ¶¶ 7-8). In response, each Plaintiff objected, citing Local Civil Rule 33.3 and refusing to provide any evidence or further statement as to damages. *Id*. Thus, Plaintiffs have not provided any information through discovery that goes to support that either was injured by FRS' letter.

### F.     Damages Alleged By Plaintiff Taylor As A Result Of The Tax Statement

The Amended Complaint does not make any particularized allegation that FRS' inclusion of the Tax Statement in the April 12, 2016 letter caused Taylor any harm. (*See generally* Pl. Am.

Compl.). Instead, the Amended Complaint makes broad allegations that the Tax Statement would mislead a least sophisticated consumer and is likely to be interpreted as a threat, which would affect the consumer's decision rsettlement. (*Id*. at ¶¶ 73-77). However, nowhere does the Amended Complaint allege that the Tax Statement had this effect on Taylor. (*See Id*.)

As stated, when FRS requested Taylor provide information about her damages she refused to answer citing Local Civil Rule 33.3. (*See* Ex. C to Etmund Aff.at FRS000036 ¶¶ 7-8). Thus, Taylor has not provided any support that the Tax Statement actually caused *her* damage.

## G.    FDCPA Sections

As a result of the content of the letters' failure to provide a statement regarding interest, the Plaintiffs allege that FRS violated 15 U.S.C. § 1692e, which provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

15 U.S.C. § 1692e. In addition to the foregoing, Plaintiff Taylor also alleges that by including the Tax Statement in the April 12, 2016 letter FRS violated 15 U.S.C. § 1692e(2)(A), (5), and (10); these sections provide that the following conduct violates the FDCPA:

> **(2)** The false representation of— **(A)** the character, amount, or legal status of any debt; or
>
> **\*\*\*\*\***
>
> **(5)** The threat to take any action that cannot legally be taken or that is not intended to be taken.
>
> **\*\*\*\*\***
>
> **(10)** The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e, (2)(A), (5), and (10).

6

## IV.   APPLICABLE LEGAL STANDARDS

### A.   Article III Standing

The rules of standing are "threshold determinants of the propriety of judicial intervention. It is the responsibility of the complainant clearly to allege facts demonstrating that [s]he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Warth v. Seldin*, 422 U.S. 490, 518 (1975). Article III of the United States Constitution confines federal jurisdiction to "cases" and "controversies," and standing is "an essential and unchanging part of" this requirement. U.S. Const. art. III, § 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A federal court must not go "beyond the bounds of authorized judicial action and thus offend[] fundamental principles of separation of powers." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). If the plaintiff lacks standing, the federal court lacks jurisdiction. "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth* 422 U.S. at 498.

The "irreducible constitutional minimum" necessary to invoke Article III standing requires the plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan*, 504 U.S. at 561 (1992)). In order to exercise the jurisdiction of an Article III court a plaintiff is required to satisfy all three elements. It is well established that the party seeking to invoke the jurisdiction of the court bears the burden of demonstrating, by competent proof, that such jurisdiction in fact exists. *See Thomas v. Gaskill*, 315 U.S. 442, 446 (1942); *see also Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 323 (2d Cir. 2001). Plaintiff must establish that she has standing "by a preponderance of the evidence". *Zink v. First Niagara Bank, N.A.*, No. 13-CV-01076-RJA-JJM, 2016 WL

3950957, at *5 (W.D.N.Y. July 1, 2016) (quoting *Perry v. Village of Arlington Heights*, 186 F.3d 826, 829 (7th Cir.1999)). Last, each element of standing must be supported with the "manner and degree of evidence required at the successive stages of litigation." *Lujan*, 504 U.S. at 561.

**B.    Summary Judgment**

Summary judgment shall be granted if the moving party establishes that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The material facts are not in dispute where "on the basis of all the pleadings, affidavits and other papers on file, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, it appears that the evidence supporting the non-movant's case is so scant that a rational jury could not find in its favor." *Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996). The moving party bears the initial burden of demonstrating that no such dispute exists and that it is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden is discharged by showing "that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. CocaCola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (quoting *Celotex*, 477 U.S. at 325).

Once the moving party satisfies the burden, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Davis v. State of New York*, 316 F.3d 93, 100 (2d Cir. 2002) (quotations omitted). The motion cannot be defeated "by relying on the allegations in [the] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir.1996) (citation omitted). Thus, "conclusory statements, conjecture or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir. 1996) (citations omitted).

## V.   **LEGAL ARGUMENT**

### A.   **Plaintiffs Lack Standing Because They Have Not Suffered a "Concrete" Injury-In-Fact.**

Plaintiffs' allegations amount to nothing more than "bare procedural violations" of the FDCPA, "divorced from any concrete harm." *Spokeo v. Robins*, 136 S. Ct. 1540, 1549 (2016). The Amended Complaint fails to satisfy the "injury-in-fact" element of standing, which is the "[f]irst and foremost" of the three requirements. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 103 (1998).

In *Spokeo*, the Supreme Court emphasized that a plaintiff must show more than a violation of statute holding that "Article III standing requires a concrete injury even in the context of a statutory violation."  *Spokeo, Inc.*, 136 S. Ct. at1549 ("Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."). "[A] bare procedural violation [of a statute], divorced from any concrete harm" cannot confer Article III standing. *Id.*

In this matter, Plaintiffs' Amended Complaint is replete with alleged procedural violations of the FDCPA unconnected to any concrete harm. Plaintiffs allege that FRS violated the FDCPA because neither letter states "balance may increase due to interest and/or fees," nor does either letter "include[] any 'safe harbor' language concerning accrual of interest and/or fees." (Pl. Am. Compl. at ¶¶ 26-27). The Amended Complaint also alleges that it was a violation of the FDCPA to include the Tax Statement in Taylor's letter without actually claiming that the inclusion of such statement caused Taylor any injury. (*Id*. at ¶¶ 54-78).

When FRS requested the Plaintiffs provide information about their damages in its First Set of Interrogatories, both Plaintiffs objected to providing such information. (*See* Ex. C to

Etmund Aff. at FRS000036, ¶¶ 7-8; and Ex. D to Etmund Aff. at FRS000048, ¶¶ 7-8). Each Plaintiff refused to answer and stated that the interrogatory was an "[i]mproper demand under Local Civil Rule 33.3." *Id*. However, this is a severe misapplication of the rule by the Plaintiffs. Local Civil Rule 33.3 states:

> Unless otherwise ordered by the Court, at the commencement of discovery, interrogatories will be restricted to those seeking names of witnesses with knowledge of information relevant to the subject matter of the action, *the computation of each category of damage alleged*, and the existence, custodian, location and general description of relevant documents, including pertinent insurance agreements, and another physical evidence, or information of a similar nature.

SDNY Local Rule 33.3(a) (emphasis added). A simple reading of the rule shows that requesting information regarding damages is specifically the type of interrogatory that is proper under Local Civil Rule 33.3, and; in fact, it is Plaintiffs' objection to FRS' interrogatory requesting such information that was improper. Plaintiffs' failure to provide any discoverable information regarding damages leaves only the allegations made in the Amended Complaint to determine whether either Plaintiff has suffered a concrete injury-in-fact.

With regard to the allegation that FRS failed to inform consumers that no interest was accruing on the account, the Amended Complaint alleges that Plaintiffs were not sure how to proceed because they did not know if interest was accruing.  Pl. Am. Compl. ¶¶ 29 and 34. Both Plaintiffs also claim that they were unable to determine the amount of their debt. *Id*. at ¶¶ 31 and 35. However, no interest was accruing on either account. (Warrant-Schwing Aff. ¶ 5); (*See generally* Bowers Aff.). This is painfully obviously from the multiple collection letters sent to each Plaintiff, in which the amount sought remained static. (*See* Exs. B-E and G-I of Bowers Aff.), and especially so when considering that the letter complained of by each Plaintiff—the Klein letter dated November 3, 2015 and the Taylor letter dated April 12, 2016—was the second letter that each had received from FRS. (*See id*.)

Even if FRS was required to include a statement regarding interest, the inclusion of such a statement would not change how Plaintiffs acted. All of the information would be the same, but there would now be an affirmative statement that the balance due will not change. Plaintiffs allege that they could not determine the value of acting based on the information in the letter, but they do not claim that they would be more inclined to act if their letters stated that the information would not change. Thus, while the statement may satisfy a procedural requirement it would be of no real value to the Plaintiffs. *See McNamra v. City of Chicago*, 138 F.3d 1219,1221 (7th Cir. 1998) ("A plaintiff who would have been no better off had the defendant refrained from the unlawful acts of which the plaintiff is complaining does not have standing under Article III of the Constitution to challenge those acts in a suit in federal court."). In this matter, each of the plaintiffs had received multiple letters all plainly setting forth the same amount as the letter before.  (*See* Bowers Aff. ¶¶ 5 and 12). These letters would make the Plaintiffs aware of the static nature of the balance due. Including a statement in the letter that interest and fees would not accrue is especially irrelevant in light of the information already provided to the Plaintiffs.

With regard to the inclusion of the Tax Statement, Taylor does not make any averment regarding the effect this statement had on her or the injury that she suffered as a result of its inclusion. (Pl. Am. Compl. at ¶¶ 54-78). Thus, Plaintiffs' claims regarding the Tax Statement are nothing more than an allegation of a statutory violation, unconnected to any alleged injury that may have been suffered by Taylor. In the wake of *Spokeo*, multiple courts analyzing the injury-in-fact element have concluded that Article III standing is not satisfied where a plaintiff alleges statutory violations void of an additional injury. *See Jackson v. Abendroth & Russell, P.C.*, No. 416CV00113, ⸺ F.Supp.3d ⸺, 2016 WL 4942074, (S.D. Iowa Sept. 12, 2016) (collecting cases).

The allegations of the Plaintiffs, that FRS' letters violate the FDCPA, are solely procedural and lack any allegation that either Plaintiff suffered a concrete injury necessary to establish Article III standing. Therefore, FRS respectfully asks the Court dismiss the claims pursuant to Fed. R. Civ. Pro. 12(b)(1).

**B.    Plaintiff Klein Cannot Prosecute Her Claims Because She Did Not Adequately Disclose The Lawsuit Against FRS in Her Bankruptcy Proceeding.**

If the Court finds that Klein articulated a concrete and particularized injury-in-fact she still does not have standing to litigate her claim, because she failed to adequately disclose the claim in her bankruptcy petition and it remains the property of her closed bankruptcy estate.

**1.    Standing Considerations in Bankruptcy Proceedings**

At the intersection of the constitutional standing doctrine and the Bankruptcy Code rests a core policy objective underlying the institution of bankruptcy in United States: the debtor's affirmative duty to prepare schedules "carefully, completely, and accurately." *Cusano v. Klein*, 264 F.3d 936, 946 (9th Cir. 2001); *See also Romeo v. FMA All., Ltd.*, No. 15CV6524ADSARL, 2016 WL 3647868, at *5 (E.D.N.Y. June 30, 2016). "[T]he disclosure obligations of consumer debtors are at the very core of the bankruptcy process and meeting these obligations is part of the price debtors pay for receiving a bankruptcy discharge…." *See In re Colvin*, 288 B.R. 477, 481 (Bankr. E.D. Mich. 2003). Indeed, "[f]ull and honest disclosure in a bankruptcy case is crucial to the effective functioning of the bankruptcy system." *In re Lowery*, 398 B.R. 512, 515 (Bankr. E.D.N.Y. 2008). The essential purpose of the bankruptcy scheduling requirements "is to allow the trustee to decide which claims to challenge. Debtors are not perfectly trustworthy, and unless the claim of exemption contains sufficient detail to put the trustee on notice of questionable assertions, it will not be possible to administer the statutory scheme." *Payne v. Wood*, 775 F.2d 202, 205-07 (7th Cir. 1985). "A complete schedule of assets and liabilities…of the debtor are

12

indispensable tools needed for the effective administration of estates under all Chapters of the Code." Editor's Comment to Bankruptcy Rule of Procedure 1007(b).

Under the Bankruptcy Code, the debtor has "an affirmative obligation to disclose all assets to the bankruptcy court, including all causes of action that can be brought." *Coffaro v. Crespo*, 721 F.Supp.2d 141, 145 (E.D.N.Y. 2010) (citing 11 U.S.C. § 521(a)(1) and § 541(a)(1)). All of the debtor's property, including any legal claims, creates an "estate" that is made up of "every conceivable interest of the debtor, future nonposessory, contingent, speculative, and derivative." *In re Arana*, 456 B.R. 161, 169 (Bankr. E.D.N.Y. 2011) (quoting *Chartschlaa v. Nationwide Mut. Ins. Co.,* 538 F.3d 116, 122 (2d Cir.2008)). Only the assigned trustee "may administer property of the estate, including bringing actions on behalf of the estate." *Id.* While the bankruptcy is pending "the debtor does not have standing to initiate or pursue an action based on a prepetition claim unless the trustee abandons it back to the debtor." *Id.* (citing *Hopkins v. Foothill Mountain, Inc. (In re Hopkins),* 346 B.R. 294, 304 (Bankr. E.D.N.Y. 2006); *Wright v. Meyers & Spencer, LLP,* 46 A.D.3d 805, 805, 849 N.Y.S.2d 274, 274–75 (N.Y. App. Div.2d Dep't 2007)). Proper disclosure of potential claims is important to allow the trustee can "investigate whether the [a]ction has value, and then prosecute it, settle it, abandon it, or arrange for [the debtor] to prosecute it in exchange for the estate receiving a share of the proceeds." *Arana*, 456 B.R. at 170 (quoting *Lopez v. Specialty Rests. Corp,* 283 B.R. 22, 28 (9th Cir. BAP 2002)).

The question of a debtor's standing arises where the debtor fails to properly disclose property in the bankruptcy schedules, including alleged pre-petition causes of action, and then subsequently attempts to invoke a right related to that property after being awarded a discharge by the bankruptcy court. "In cases where a debtor attempts to bring a cause of action for a pre-

petition claim that was not disclosed in the bankruptcy proceeding, the debtor lacks standing because pre-petition claims belong to the bankruptcy trustee." *Barris v. Midland Funding LLC*, No. 14-cv-6469, 2015 WL 519176, at *2 (D.N.J. Feb. 9, 2015) (citation omitted); *see also Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 546 (7th Cir. 2014) (debtor would only have standing if the claims had been abandoned by the trustee); *Romeo* 2016 WL 3647868, at *15 (concluding that a debtor lacked standing due to an incomplete disclosure); *Tilley v. Anixter Inc.*, 332 B.R. 501, 509 (D. Conn. 2005) ("debtor filing for bankruptcy has a duty to list all of his or her assets, including legal claims, on the appropriate schedule of the bankruptcy petition").

The debtor lacks standing in such circumstances because, by filing a bankruptcy petition, the debtor creates an estate, which consists of "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative" as of the date the debtor filed the petition. *Arana*, 456 B.R. at 169 (quoting *Chartschlaa*, 538 F.3d at 122). The trustee presiding over the administration of the debtor's bankruptcy estate "has sole and exclusive authority to pursue claims on behalf of the estate;" the debtor's rights in any asset included in the bankruptcy estate—including an alleged cause of action—are extinguished unless and until the asset is abandoned by the estate back to the debtor. *Barris*, 2015 WL 519176, at *2 (citing *In re Dionisio*, 2003 U.S.App. LEXIS 12432, at *5 (3d Cir. 2003).

### 2. Klein Did Not Properly Disclose A Cause of Action Against FRS in Her Bankruptcy Schedules.

While there is no "bright line rule" establishing the necessary level of specificity with which the debtor must describe her assets in order to correctly schedule the property, "[w]hat is required is reasonable particularization under the circumstances." *Romeo*, 2016 WL 3647868 at *6 (quoting *In re Mohring*, 142 B.R. 389, 395 (Bankr. E.D. Cal. 1992), *aff'd*, 153 B.R. 601 (B.A.P. 9th Cir. 1993), *aff'd*, 24 F.3d 247 (9th Cir. 1994)). "[E]very bankrupt must do enough

14

itemizing to enable the trustee to determine whether to investigate further." *Mohring*, 142 B.R. at 395 (quoting *Payne*, 775 F.2d at 205-07).  It is not enough that the debtor list a generic claim, or one that is "close" to the one they actually possess.  *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314, 321 (3d Cir. 2003) ("[The debtor-plaintiff ] did not specify any of the claims contained in the instant complaint…much less attempt to place any monetary value on them.  We agree that such boilerplate language is simply not adequate to provide the level of notice required."); *see also Tilley*, 332 B.R. at 510-511 (Chapter 7 debtor's disclosure of cause of action for "Claim against ex-husband and ex-husband's employer for back child support" not sufficient disclosure to encompass claim for intentional infliction of emotional distress).

In his Chapter 7 bankruptcy filings, Klein disclosed that she possessed the following cause of action: "Possible FDCPA claims." (*See* Ex. B to Etmund Aff. at p. FRS000030 and 31). She asserted that the value of the "possible FDCPA claims" was $1,000.  (*Id*.)  Like those in *Romeo*, Klein's bankruptcy schedules did not identify any party or parties against whom she had "possible FDCPA claims" or offer any further particularization of such claims.  The boilerplate disclosure offered by Klein was insufficient to allow the trustee to investigate the value of the asset, let alone prosecute the "possible" claims.

Klein's vague disclosure is particularly egregious under the circumstances.  Her bankruptcy petition was filed nearly five months *after* she was sent the letter upon which her claim against FRS is based.[1]  Klein opted to use a boilerplate description of her claim against FRS, notwithstanding.  Klein even declined to amend her bankruptcy schedules after this action

---

[1] Klein's claim against FRS is based on a letter sent to her in November 3, 2015, (Pl. Am. Compl. at ¶ 17), Klein filed her petition for bankruptcy on April 4, 2016.  (Ex. B to Etmund Aff.).

was filed, despite more than one month elapsing between the commencement of this case and the closure of the bankruptcy case.[2]

Klein, upon filing her bankruptcy petition, was divested of standing to pursue any purported claims against FRS.  Because Klein failed to adequately disclose a claim against FRS in her bankruptcy schedules, the trustee could not abandon it as property, and it therefore remain part of Klein's bankruptcy estate.  *See Stein v. United Artists Corp.*, 691 F.2d 885, 891 (9th Cir. 1982) (affirming dismissal of debtor's unscheduled anti-trust claim); *Romeo*, 2016 WL 3647868 at *18 (concluding that the plaintiff-debtor lacked standing to pursue claim not properly scheduled).

Taylor reasonably disclosed her cause of action against FRS, albeit belatedly.  Taylor's initial schedules disclosed a cause of action as an asset with the description: "possible fair debt collection claim."  (*See* Ex. A to Etmund Aff. at FRS000021 and 23).  However, unlike Klein, Taylor amended the description of the cause of action disclosed in her schedules after commencing the above-captioned matter.  The amended schedules describe the cause of action as "FDCPA Actions including Taylor v. FRS, 1:16-cv-04685."  (*See* Ex. A to Etmund Aff. at FRS000025 and 27).

### 3.    Klein is Judicially Estopped From Asserting Claims Against FRS

Even if she had standing, Klein would be judicially estopped from pursuing her claim against FRS as a result of her failure to sufficiently disclose her claim in her bankruptcy schedules.  "Judicial estoppel is designed to prevent a party who plays fast and loose with the courts from gaining an unfair advantage through the deliberate adoption of inconsistent positions in successive suits." *Wight v. BankAmerica Corp.*, 219 F.3d 79, 89 (2d Cir. 2000). In order to be

---

[2] Klein's claim against FRS was commenced on June 20, 2016.  (Doc. No. 1.)  Klein obtained a discharged in her bankruptcy case on July 19, 2016. (Ex. B to Etmund Aff. at p FRS000032).

judicially estopped from arguing their claims FRS must show that Plaintiffs 1) "advanced an inconsistent factual position in a prior proceeding, and (2) the prior inconsistent position was adopted by the first court in some manner." *Id*. at 90 (internal quotations omitted). "In the bankruptcy context, judicial estoppel is commonly invoked in order to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy." *Coffaro v. Crespo*, 721 F. Supp. 2d 141, 145 (E.D.N.Y. 2010) (internal quotations omitted). Because full and honest disclosures are required to uphold the integrity of the bankruptcy system, a court must "not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding." *Rosenshein v. Kleban*, 918 F. Supp. 98, 104 (S.D.N.Y. 1996).

Here, Klein failed to carefully, completely, and accurately disclose her FDCPA claim against FRS in her bankruptcy schedules. *See Romeo* 2016 WL 3647868 at *14.  Despite the fact that Klein possessed all of the necessary information to pursue her claim against FRS, she advanced the position in bankruptcy court that she possessed only *possible* FDCPA claims. (*See* Ex. B to Etmund Aff. at FRS000030).   The bankruptcy court discharged Klein's obligations without ever learning that Klein had filed an *actual* FDCPA claim against FRS.  Because the bankruptcy court adopted her prior, inconsistent position with regard to the nature of causes of actions she possessed at the time of filing, Klein is judicially estopped from pursuing her claim against FRS.

## C.   FRS Is Not Required To Include A Statement Regarding Interest Where None Is Accruing On The Account

If the Court allows the claims to proceed, FRS is entitled to Summary Judgment as a matter of law. Plaintiffs allege that FRS violated 15 U.S.C. § 1692e, which prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection

with the collection of any debt. The basis for this allegation is that "[n]either letter discloses whether the stated balance may increase due to interest." (Pl. Am. Compl. ¶ 26).

To be sure, Plaintiffs do not allege that the balance stated in their letters was not a complete and accurate representation of the amount owed, or that the balance stated in their letters may increase over time due to interest and fees. (*See generally id.*) Thus, Plaintiffs are not contesting that either statement of the balance due—$3171.12 for Klein, and $599.98 for Taylor—is inaccurate, or that any information regarding the amount owed is false or misleading in any way. Plaintiffs' allegations are merely that because their collection letters did not affirmatively inform them that interest and/or fees were not accruing on the accounts, they were unable to determine the amounts of their debts. (*Id*. at ¶¶ 31 and 35).

In other words, Plaintiffs' allegations are that excluding a statement regarding interest makes the letters susceptible to two or more meanings. (*Id*. at 37). However, neither Klein nor Taylor's accounts were accruing any interest at any time after each was referred to FRS for collection. (Warrant-Schwing Aff. ¶ 6); (Bowers Aff. ¶ 17). Each letter clearly and accurately sets forth the total amount of the debt. Any reading of either letter that unreasonably interprets the balances as accruing interest would be idiosyncratic and bizarre, which does not result in an FDCPA violation. Moreover, FRS sent multiple letters to each Plaintiff, and the amount set forth remained static. (*See* Bowers Aff. ¶¶ 5 and 12). To claim that they were unable to determine the amounts of the debts is wholly without merit and should not be countenanced.

In their Amended Complaint, Plaintiffs include a partial citation to the Second Circuit's holding in *Avila v. Riexinger & Associates, LLC*, that "§ 1692e requires debt collectors, when they notify consumers of their account balance, to disclose whether the balance may increase due to interest and fees." (Pl. Am. Compl. ¶ 22); *see also Avila*, 817 F.3d 72, 76 (2d Cir. 2016).

18

However, this requirement only applies where interest is *actually accruing* on the account. In order to understand the holding in *Avila*, the Court must examine the context of the statement through the immediately preceding sentences. In *Avila* Second Circuit held that:

> A reasonable consumer could read the notice and be misled into believing that she could pay her debt in full by paying the amount listed on the notice. In fact, however, *if interest is accruing daily, or if there are undisclosed late fees*, a consumer who pays the 'current balance' stated on the notice will not know whether the debt has been paid in full. The debt collector could still seek the interest and fees that accumulated after the notice was sent but before the balance was paid, or sell the consumer's debt to a third party, which itself could seek the interest and fees from the consumer.

> Because the statement of an amount due, without notice that *the amount is already increasing due to accruing interest or other charges*, can mislead the least sophisticated consumer into believing that payment of the amount stated will clear her account, we hold that the FDCPA requires debt collectors, when they notify consumers of their account balance, to disclose that the balance may increase due to interest and fees.

*Id.* (emphasis added).

The Eastern District of New York recently addressed whether a debt collector is required to include a statement in collection notices that interest is not accruing on an account. *See Dick v. Enhanced Recovery Co., LLC*, No. 15CV2631RRMSMG, 2016 WL 5678556 (E.D.N.Y. Sept. 28, 2016). The facts in *Dick* are substantially similar to the facts presently before the Court. In sum, Dick received a collection letter stating the correct balance owed without a statement that no interest or collection fees would accrue in the future, which Dick argued could imply a future imposition of non-interest charges and fees. *Id*. at *4.

The court noted that Dick's interpretation contravenes the plain language of the collection letter, and that the letter would not leave a least sophisticated consumer "in doubt of the nature and legal status of the underlying debt; nor [did] it impede the consumer's ability to respond to or dispute collection." *Id*. (citing *Gabriele v. Am. Home Mortg. Serv., Inc.,* 503 Fed.Appx. 89, 94 (2d Cir. 2012) ("Our case law demonstrates that communications and practices that could

19

mislead a putative-debtor as to the nature and legal status of the underlying debt, or that could impede a consumer's ability to respond to or dispute collection, violate the FDCPA.")).

The Eastern District of New York also conducted an analysis of the Second Circuit's holding in *Avila* and whether it required informing consumers when no interest would accrue on an account. *Id*. at *4-*5. *Dick* held that "[t]he Second Circuit's holding in *Avila* [] –that it is misleading for a debt collector to list the amount owed without disclosing the fact that said amount is increasing – does not support [the] argument that it is misleading to list the amount owed without affirmatively noting that the amount is *not* increasing." *Id*. at *5. The court went on to hold that failing to inform a debtor interest will not accrue "does not implicate the concerns discussed by the Second Circuit …, and there is no requirement that every statement in a debt collection notice include an extra assurance that the fact stated *will not* change in the future." *Id*. (emphasis in original).

While not binding on this Court, the *Dick* decision is persuasive authority and the issue addressed by the Eastern District of New York was substantially similar to the allegations made by the Plaintiffs in this matter. While *Avila* resulted in a single-edge sword to be used when accruing interest is not disclosed, this case is one of many that attempts to convert *Avila* into a double-edge sword, which requires an interest disclosure regardless of whether interest is accruing. Had the Second Circuit so intended, its esteemed Justices clearly could have fashioned such a double-edge holding, but they chose not to do so. Plaintiffs' efforts to do what the Second Circuit chose not to do must not be allowed. Thus, FRS respectfully asks the Court to not extend *Avila* beyond what was intended by the Second Circuit and to hold that the FDCPA does not require a debt collector to affirmatively inform a consumer that the amount of debt will not increase where no interest or fees are accruing.

**D.      Inclusion of the True and Accurate Tax Statement in Taylor's Letter Did Not Violate the FDCPA.**

**1.      The Tax Statement is True and Accurate.**

In addition to the allegations regarding a lack of interest disclosure in both letters, Plaintiffs also argue that Taylor's letter violated 15 U.S.C. § 1692e because it included the Tax Statement. However, the Tax Statement provides accurate and clear information to the consumer.

Under 26 U.S.C. § 61(a)(12) the IRS includes in the definition of gross income "***[i]ncome from the discharge of indebtedness.***" (citation omitted, emphasis added). Indeed, as the United States Tax Court has previously stated:

> It is well settled that gross income includes income from the discharge of indebtedness. Sec. 61(a)(12). The general theory is that ***to the extent that a taxpayer has been released from indebtedness, he has realized an accession to income*** because the cancellation effects a freeing of assets previously offset by the liability arising from such indebtedness.

*Cozzi v. C.I.R.*, 88 T.C. 435, 445 (1987) (citing *United States v. Kirby Lumber Co.*, 284 U.S. 1 (1931)) (emphasis added). Including discharge of indebtedness as income has been a mainstay in tax law, as the law has the same effect now as it did when the *Cozzi* decision was issued in 1987.

Furthermore, the code goes on to define taxable income as "gross income minus the deductions allowed by this chapter." 26 U.S.C. §63(a). Thus, because forgiven debt is to be included in gross income that amount forgiven in settlement will impact a debtor's taxable income and *may* have tax consequences.

This understanding of the language in the tax code is supported by documents and information published by the IRS to assist individuals with tax questions, which confirm the fact that settled debt may have tax consequences, and thus in turn, the veracity of the Tax Statement in FRS' letter.

The IRS website contains a list of information in its Tax Topic Index. Topic 431 is titled

"Canceled Debt – Is It Taxable or Not?"  There, it clearly provides the general requirement "if you have cancellation of debt income because your debt is canceled, forgiven, or discharged for less than the amount you must pay, ***the amount of the canceled debt is taxable and you must report the canceled debt on your tax return for the year the cancellation occurs***."  IRS Tax Topic No. 431, *Canceled Debt – Is It Taxable or Not?*, (for use in preparing 2016 tax returns), available at https://www.irs.gov/taxtopics/tc431.html (emphasis added).   This document confirms that the Tax Statement is a true statement.

The IRS also produces various numbered publications answering questions regarding taxes. In Publication 525 under the heading "Miscellaneous Income" is the subheading "Canceled Debts."  This section informs the reader "***[i]n most cases, if a debt you owe is canceled or forgiven, other than as a gift or bequest, you must include the canceled amount in your income.***"  IRS Pub. No. 525, Miscellaneous Income – "Cancelled Debt", (for use in preparing 2016 returns); available at https://www.irs.gov/publications/p525/ar02.html (emphasis added).  It also explains that "[a] debt includes any indebtedness for which you are liable or which attaches to property you hold." *Id.*

Publication 4681 entitled "Canceled Debts, Foreclosures, Repossessions, and Abandonments (for Individuals)" includes an entire chapter on canceled debts. This publication explains that "***[g]enerally, if you owe a debt to someone else and they cancel or forgive that debt for less than its full amount, you are treated for income tax purposes as having income*** and may have to pay tax on this income."  IRS Pub. No. 4681, Canceled Debts, Foreclosures, Repossessions, and Abandonments (for Individuals), at 2 (for use in preparing 2016 returns); available at https://www.irs.gov/pub/irs-pdf/p4681.pdf (emphasis added).

Finally, Publication 4731 explains the distinction between the requirement for a 1099C

Form and the potential tax consequences of a canceled debt noting that "[t]he creditor is not required to issue a Form 1099-C if the canceled debt is under $600. ***However, the taxpayer may be required to report the canceled debt as income regardless of the amount***."  IRS Pub. No. 4731, Screening Sheet for Nonbusiness Credit Card Debt Cancellation, (for use in preparing 2016 returns); available at https://www.irs.gov/pub/irs-pdf/p4731.pdf (emphasis added).

Despite Plaintiffs' efforts to read 1099C language into Taylor's letter, it is clear that the letter made no such reference.  It is also clear that while a creditor may have 1099C reporting requirements in certain instances, consumers may have a reporting requirement regardless of the amount of "income" created by a debt settlement.  Thus, FRS' letter is nothing but true.

As evidenced by various IRS publications, it is not false to inform Plaintiff that settling for less than the full amount of the debt may have tax consequences.

### 2.     The Letter is Not Deceptive or Misleading

Plaintiffs' Complaint conflates the Tax Statement with separate and distinct 1099C requirements and points to the fact that the letter makes no distinction between interest and principal owed.  Pl. Am. Compl. ¶¶ 65-67.   However, these facts are irrelevant as to whether or not inclusion of the Tax Statement violated the FDCPA and are indicative of Plaintiffs' unreasonable interpretation of the letter in an attempt to state a claim against FRS.

The Tax Statement makes no mention that the FRS, or its client, will make any report with regard to the forgiven debt; nor does it reference 1099C, which is totally separate from statement made in the letter. Nonetheless, in her responses to discovery Taylor denied that the "letter does not include any reference to reporting of a debt settlement to the IRS." (Ex. C to Etmund Aff. At FRS000042; ¶ 14). Taylor also denied that the letter "made no reference to either Defendant or its client reporting any discharge of indebtedness to the IRS." (*Id*. at FRS000044; ¶

29). However, a plain reading of the letter, attached as Exhibit 1 to Plaintiffs Amended Complaint, clearly shows that both of these denials by Taylor are patently false and that Taylor is effectively attempting to read something into the letters that does not exist. The letter makes no reference to the IRS nor does it reference that any discharged indebtedness will be reported to the IRS. (*See* Ex. 1 to Pl. Am. Compl.).

In fact, nothing in the letter implies that FRS, or its client, would take *any* action with regard to the settlement.  As the Seventh Circuit has succinctly stated, "The [FDCPA] is not violated by a dunning letter that is susceptible of an ingenious misreading, for then every dunning letter would violate it. The Act protects the unsophisticated debtor, but not the irrational one."   *White v. Goodman*, 200 F.3d 1016, 1020 (7th Cir. 2000). Moreover, bizarre and idiosyncratic interpretations of the FDCPA or interpretations that provide a senseless result must be disregarded by the Court. *Durkin v. Equifax Check Servs*., 406 F.3d 410, 414 (7th Cir. 2005); *Olvera v. Blitt & Gaines, P.C.* 431 F.3d 285, 289 (7th Cir. 2005).

Plaintiffs' allegations are not based on the actual content of the letter, but rather an obvious attempt to interpret the harmless language in a manner that conforms with a few recent court decisions holding that it is a violation of the FDCPA to inform a consumer that a 1099C disclosure will be filed in a dunning letter offering to forgive less than $600 on a debt. *See Good v. Nationwide Credit, Inc*., 55 F.Supp, 3d 742 (E.D. Pa. 2014); *Balon v. Enhanced Recovery Co., Inc.*, No. 3:16-CV-0410, 2016 WL 3156064 (M.D. Pa. June 2, 2016).

However, cases involving a 1099C disclosure are readily distinguishable from the present situation due to the fact that the letter does not mention a 1099C form and neither states nor implies that FRS will take any action against Taylor. In its letter, FRS merely informs Taylor that settlement may have tax consequences, which is a true and non-misleading statement regarding

3357963v10

debt settled for less than the full amount. *See* 26 U.S.C. § 61(a)(12); Section D.1, *supra*.

Moreover, while 1099C language is not an issue in this matter, despite Plaintiffs' efforts to read 1099C into FRS' letter, the fact that income from discharge of indebtedness is included as gross income has been recognized by another court as an "accurate representation of the law." *Rhone v. AllianceOne Receivables Mgmt., Inc.*, No. 1:14-CV-02034-JMS, 2015 WL 4758786, at *5 (S.D. Ind. Aug. 12, 2015) (quoting 26 U.S.C. § 61(a)(12)). In *Rhone*, the court rejected a debtor's claim that inclusion of a 1099C Disclosure language in a dunning letter was misleading.

The *Rhone* court held that the debt collector's "juxtaposition of an unconditional term—'*any* settlement write-off'—with a conditional term—'*may* be reported to the internal revenue service'—may be poor phrasing, but misleading or deceptive it is not." *Id.* at *5. Similarly, there is nothing misleading or deceptive about informing the consumer that the "settlement may have tax consequences."  Thus, even the inclusion of 1099C language is not necessarily a violation of law.  But again, in this instance, FRS' letter correctly advised Taylor that settlement of the account may result in tax consequences.  As there is no $600 threshold issue in this matter, as there would be had FRS' letter relied upon or referenced 1099C, FRS' statement is a true statement and not subject to liability.

## VI.  <u>CONCLUSION</u>

Based on the foregoing, FRS respectfully requests this Court grant its motion to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(1) because the Plaintiffs lack standing; or, alternatively, grant its motion for summary judgment pursuant to Fed. R. Civ. P. 56, and dismiss Plaintiff's complaint with prejudice.

MOSS & BARNETT

Dated: October 21, 2016

By /s/ Michael T. Etmund
 Michael T. Etmund, NY REG # 5168331
 150 South Fifth Street
 Suite 1200
 Minneapolis  MN  55402-4129
 Telephone:  (612) 877-5000

3357963v10

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2016, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure and/or the Southern District's Local Rules, and/or the Southern District's Rules on Electronic Service, upon the following parties and participants:

Craig B. Sanders
David M. Barshay
Barshay Sanders, PLLC
100 Garden City Plaza, Suite 500
Garden City, New York 11530
csanders@sanderslawpllc.com
dbarshay@bakersanders.com


/s/ Michael T. Etmund
Michael T. Etmund

27

3357963v10