```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
CHRISTINE TAYLOR, et al.,                                     :
                                        Plaintiffs,           :
                                                              :
                -against-                                     :
                                                              :
FINANCIAL RECOVERY SERVICES, INC.,                            :
                                        Defendant.            :
------------------------------------------------------------- X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/18/17

16 Civ. 4685 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

Plaintiffs Christine Taylor and Christina Klein allege that Defendant Financial Recovery Services, Inc. ("FRS") violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. The parties cross-move for summary judgment. For the following reasons, summary judgment is granted in Defendant's favor.

## I. BACKGROUND

The following uncontested facts are taken from the parties' 56.1 Statements and materials submitted on this motion.

### A. Plaintiff Christine Taylor

In 2010, Taylor opened a credit card account, which she used to buy personal and household items. After she defaulted on her credit card payments in 2015, the balance due on her credit card statement increased each month due to interest and fees.

In March 2016, the First National Bank of Omaha, which owned Taylor's credit card debt, referred her account to FRS for collection. FRS sent Taylor three letters approximately a month apart regarding her credit card debt. None of the letters refers to interest or fees.

FRS's first letter to Taylor, dated March 8, 2016, states the amount $599.98 six times on the one-page document. The upper right hand corner contains information about the debt,

including "AMOUNT DUE AS OF CHARGE-OFF: $599.98" and "BALANCE DUE: $599.98." The body of the letter states that Taylor's account has "been assigned to this agency for collection.  We [FRS] are a professional collection agency attempting to collect a debt . . . .  You owe $599.98."  The bottom consists of three payment coupons, each of which states, "Current Balance: $599.98."

The second and third letters, dated April 12 and May 10, 2016, respectively, each state the amount $599.98 multiple times.  Like the first letter, both again say in the upper right corner "BALANCE DUE: $599.98."  Both contain three payment coupons, all of which again say "Current Balance $599.98."  The second letter states, "As of the date of this notice you owe $599.98."  It also provides that Taylor could "settle [her] account" for less than $599.98 by making one lump sum payment by a certain date or making installment payments on the timeline provided in the letter.  The letter elaborates, "This settlement may have tax consequences.  Please consult your tax advisor."  The third letter also includes a settlement offer, providing that FRS could "accept a settlement on [Taylor's account] for $299.99."  As with the April letter, it provides: "This settlement may have tax consequences.  Please consult your tax advisor."

### B.  Plaintiff Christina Klein

Klein obtained a credit card from Barclays Bank ("Barclays"), which she used to make purchases for personal or household use.  Around the beginning of 2014, she defaulted on her payments to Barclays.  Klein attests that every month that she did not make a full payment, interest and late fees were added to the balance on her Barclays credit card statement.

In October 2015, Barclays referred Klein's account to FRS for collection.  FRS sent Klein four letters approximately a month apart regarding her credit card debt.  None of the letters refers to interest or fees.

FRS's first letter to Klein, dated October 2, 2015, states in the upper right corner, "AMOUNT DUE AS OF CHARGE OFF: $3171.12" and "BALANCE DUE: $3171.12." The body of the letter states that Klein's account has "been assigned to this agency for collection. We [FRS] are a professional collection agency attempting to collect a debt . . . .  You owe $3171.12." The bottom of the letter consists of three payment coupons each of which says "Current Balance: $3171.12." FRS also sent Klein letters in November 2015, December 2015 and January 2016. These subsequent letters state in the upper right corner "BALANCE DUE: $3171.12," and each letter contains the three payment coupons, each stating "Current Balance: $3171.12." The January letter also states in the text, "As of the date of this notice you owe $3171.12. We are authorized to settle the above listed account(s) at a substantial reduction to you . . . ."

In April 2016, Klein filed a voluntary petition for bankruptcy under Chapter 7 of the United States Bankruptcy Code. On Schedule A/B of the Form 106A/B, she listed "Possible FDCPA claims" in the amount of $1,000. The bankruptcy court discharged her debts in July 2016, which is one month after Plaintiffs filed the Complaint alleging claims under the FDCPA.

**C.    The Statements at Issue**

Count One alleges that the letters sent to Plaintiffs violated 15 U.S.C. § 1692e on the grounds that they were misleading as to whether or not each Plaintiff's debt was accruing interest or fees. Count Two claims that the letter sent to Taylor violated 15 U.S.C. § 1692e, § 1692e(2)(A), § 1692e(5) and § 1692e(10) based on the sentence, "This settlement may have tax consequences," alleging that it gives the misimpression that FRS would report the settlement to the IRS. The parties cross-move for summary judgment on both counts.

## II.     STANDARD

Summary judgment is appropriate where the record before the court establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Apotex Inc. v Acorda Therapeutics, Inc.*, 823 F.3d 51, 59 (2d Cir. 2016).  The moving party bears the initial burden of informing the court of the basis for the summary judgment motion and identifying those portions of the record that demonstrate the absence of a genuine dispute as to any material fact.  Fed. R. Civ. P. 56(c)(1); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  Courts must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor.  *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1347 (2015).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S at 248.

## III.    DISCUSSION

### A.      Standing

FRS first argues that Plaintiffs lack standing because they did not suffer an injury in fact.  This argument is rejected.  "[S]tanding is a federal jurisdictional question determining the power of the court to entertain the suit."  *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (internal quotation marks omitted).  To satisfy this jurisdictional requirement, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of

the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

An injury in fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 1548. "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id.* (internal quotation marks omitted); *see Strubel v. Comenity Bank*, 842 F.3d 181, 188 (2d Cir. 2016) (noting that the particularity requirement is satisfied if the plaintiff shows the defendant "injured her in a way distinct from the body politic"). To be concrete, an injury may be either tangible or intangible so long as it "actually exist[s]." *Spokeo*, 136 S. Ct. at 1548–49. In examining whether an intangible harm is concrete, a court should consider whether Congress has "identif[ied] and elevat[ed]" the intangible harm alleged. *Id.* at 1549. "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id.* However, "a bare procedural violation, divorced from any concrete harm," does not satisfy Article III's injury-in-fact requirement. *Id.*

Since the Supreme Court's decision in *Spokeo*, courts within and outside this Circuit have consistently held that a violation of 15 U.S.C. § 1692e can give rise to an injury in fact. *See, e.g.*, *Church v. Accretive Health, Inc.*, 654 F. App'x 990, 994–95 (11th Cir. 2016); *Fuentes v. AR Res., Inc.*, No. 15 Civ. 7988, 2017 WL 1197814, at *5 (D.N.J. Mar. 31, 2017) (collecting cases and joining the "overwhelming majority of courts that have determined that FDCPA violations under [§ 1692e] . . . give rise to concrete, substantive injuries sufficient to establish Article III standing" (internal quotation marks omitted)); *Garcia v. Law Offices Howard Lee Schiff P.C.*, No. 16 Civ. 791, 2017 WL 1230847, at *4 (D. Conn. Mar. 30, 2017); *Bautz v. ARS Nat'l Servs., Inc.*, No. 16 Civ. 768, 2016 WL 7422301, at *10 (E.D.N.Y. Dec. 23, 2016). These courts reason

that a materially false or misleading statement is not a "bare procedural violation" but rather an infringement on an individual's substantive right conferred by Congress to receive truthful information in debt collection communications. *See, e.g.*, *Garcia*, 2017 WL 1230847, at *3; *Bautz*, 2016 WL 7422301, at *8 ("[T]hrough Section 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices . . . ." (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982)).

Plaintiffs adduce sufficient evidence to confer standing. As to particularity, FRS sent collection notices to Plaintiffs regarding their own respective debts. As to concreteness, both Plaintiffs attest that those notices failed to give them accurate, non-deceptive information about their specific debts because they could not determine whether the amounts owed were fixed or accruing interest. The evidence is sufficient to show injury for standing purposes. *See, e.g.*, *Bautz*, 2016 WL 7422301, at *9. To the extent Defendant argues that Plaintiffs lack standing because the letters did not contain materially false or misleading information, this argument goes to the merits of the claim and is addressed below. *Cf. Bond v. United States*, 564 U.S. 211, 219 (2011) ("[T]he question whether a plaintiff states a claim for relief goes to the merits in the typical case, not the justiciability of a dispute . . . ." (internal quotation marks omitted)).

### B. Klein's Bankruptcy Disclosures

FRS contends that Klein is barred from pursuing her FDCPA claim because she failed to disclose the claim during her bankruptcy proceeding. Because her disclosure was adequate, this argument is without merit.

Under 11 U.S.C. § 521(a)(1), a debtor who has filed for bankruptcy must file a schedule disclosing all of her assets, which are part of the estate. *See Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008). This obligation includes disclosing "causes of action

possessed by the debtor at the time of filing." *Crawford v Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 484 (2d Cir 2014); *see also* 4 Collier on Bankruptcy ¶ 521.06[3][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2015) ("Possible causes of action belonging to the debtor should be listed [on the schedule of assets], even if the likelihood of success is unknown."). Properly scheduled property that has not been administered by the trustee at the close of the bankruptcy case is abandoned, *i.e.*, returned to the debtor by operation of law. *See Chartschlaa*, 538 F.3d at 122; 11 U.S.C. § 554(c). However, undisclosed assets that the trustee has not otherwise abandoned "automatically remain property of the estate after the case is closed." *Chartschlaa*, 538 F.3d at 122; *see* 11 U.S.C. § 554(d).

Accordingly, a debtor who fails to properly schedule a legal claim may be barred from asserting that claim after the close of the bankruptcy case. *See Chartschlaa*, 538 F.3d at 122–23. Courts have held in such circumstances that the debtor lacks standing to pursue the claim, is precluded by the doctrine of judicial estoppel, or both. *See, e.g.*, *Crawford*, 758 F.3d at 484–87 (addressing lower court's dismissal of claim based on lack of standing and judicial estoppel); *BPP Ill., LLC v. Royal Bank of Scot. Grp., PLC*, No. 13 Civ. 638, 2015 WL 6143702, at *5 (S.D.N.Y. Oct. 19, 2015).

In deciding whether an asset, such as a legal claim, has been adequately disclosed, "[t]here are no bright-lines rules for how much itemization and specificity [are] required." 4 Collier on Bankruptcy ¶ 521.06[1]; *accord Tilley v. Anixter Inc.*, 332 B.R. 501, 509 (D. Conn. 2005). A debtor generally satisfies the duty if he or she puts the trustee on inquiry notice -- that is, the trustee has enough information "to determine whether to investigate further." *Romeo v. FMA All., Ltd.*, No. 15 Civ. 6524, 2016 WL 3647868, at *6 (E.D.N.Y. June 30, 2016) (quoting *In re Furlong*, 660 F.3d 81, 87 (1st Cir. 2011)); 4 Collier on Bankruptcy ¶ 521.06[1] ("The purpose

of the schedules is to give interested parties sufficient information to decide whether they want to engage in further inquiry."). "In other words, debtors' schedules need not identify every potential cause of action, every possible defendant, or even any defendant at all, so long as a partially scheduled claim contains enough information that a reasonable investigation by the trustee would reveal the claim ultimately asserted." *Bejarano v. Bravo! Facility Servs., Inc.*, No. 16 Civ. 962, 2017 WL 1450570, at *3 (D.D.C. Apr. 24, 2017) (internal quotation marks omitted).

  Klein's schedule, which discloses "Possible FDCPA claims" with a value of $1,000, gave the trustee enough information to evaluate the claim and decide whether to investigate further. First, the disclosure gave notice as to the maximum value of the claim, which is statutorily capped at $1,000. *See* 15 U.S.C. § 1692k(a)(2)(A). Second, "due to the specialized nature of the FDCPA," the disclosure gave "basic notice of the underlying factual scenario." *Romeo,* 2016 WL 3647868, at *11. Third, Klein had only a single claim against one defendant, the claim she asserts in this case; thus the trustee would not have to distinguish among multiple claims or multiple defendants. *See id.* (holding that statement "Possible Fair Debt Collection Claim" sufficiently disclosed claim where the plaintiff had an FDCPA claim against a single defendant).

  Because Klein adequately disclosed her FDCPA claim, it was abandoned by the estate and reverted back to her at the close of her bankruptcy case. She neither lacks standing nor is judicially estopped from bringing this suit. *See id.* at *11–14 (holding that neither judicial estoppel nor the standing doctrine precluded plaintiff from pursuing FDCPA claim that was sufficiently disclosed in bankruptcy proceeding); *Eun Joo Lee v. Forster & Garbus LLP*, 926 F. Supp. 2d 482, 490 (E.D.N.Y. 2013) (same).

### C.     Alleged Violations Under 15 U.S.C. § 1692e

#### 1.  Count One -- Lack of Statements Regarding Interest

Summary judgment is granted in favor of FRS on Count One because the letters' failure to state that interest or fees had stopped accruing does not violate § 1692e as a matter of law.

The FDCPA was enacted "to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010) (citing 15 U.S.C. § 1692(e)). "To accomplish these goals, the FDCPA creates a private right of action for debtors who have been harmed by abusive debt collection practices." *Benzemann v. Citibank N.A.*, 806 F.3d 98, 100 (2d Cir. 2015) (citing 15 U.S.C. § 1692k).

Pursuant to § 1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Whether a collection letter violates § 1692e "is determined from the perspective of the objective 'least sophisticated consumer.'" *Easterling v. Collecto, Inc.*, 692 F.3d 229, 233 (2d Cir. 2012). The "least sophisticated consumer" is a "naïve" and "credulous" person who possesses a "rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Altman v. J.C. Christensen & Assocs., Inc*., 786 F.3d 191, 193–94 (2d Cir. 2015). "[E]ven if a debt collector accurately conveys the required information, a consumer may state a claim if she successfully alleges that the least sophisticated consumer would inaccurately interpret the message." *Carlin v Davidson Fink LLP*, 852 F.3d 207, 216 (2d Cir. 2017).

"Under this standard, a collection notice can be misleading if it is open to more than one reasonable interpretation, at least one of which is inaccurate." *Avila v. Riexinger & Assocs.*,

*LLC*, 817 F.3d 72, 75 (2d Cir. 2016) (internal quotation marks omitted).  FDCPA protection, however, "does not extend to every bizarre or idiosyncratic interpretation of a collection notice[,] and courts should apply the standard in a manner that protects debt collectors against liability for unreasonable misinterpretations of collection notices."  *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 173 (2d Cir. 2015).

Because the least sophisticated consumer standard requires an objective inquiry, it "may be applied as a matter of law and thus is an appropriate issue for disposition on a motion for summary judgment."  *Ramirez v. Verizon Commc'ns, Inc.*, No. 13 Civ. 6000, 2015 WL 917531, at *4 (S.D.N.Y. Feb. 27, 2015); *see, e.g.*, *Clomon v. Jackson*, 988 F.2d 1314, 1320–21 (2d Cir. 1993) (affirming grant of summary judgment in favor of debtor where the collection letters were "sufficient to give the least sophisticated consumer" a misleading impression under § 1692e).

The collection notices are not false, misleading or deceptive as a matter of law.  First, Plaintiffs have failed to adduce evidence that the amount stated as due from each Plaintiff is factually inaccurate.  The evidence shows that, at the time the debts were referred to collections, Plaintiffs owed $599.98 and $3171.12 respectively and that these amounts remained unchanged during the period the letters at issue were sent.[1]  Plaintiffs concede that "the accuracy of

---

[1] Contrary to Plaintiffs' argument, the "Fact Sheet[s]," which showed an interest rate of 0%, were produced in Defendant's response, dated September 22, 2016, to Plaintiffs' First Request for Production of Documents.  *See* Decl. of David M. Barshay, Ex. 5 (Dkt. No. 35-5).  Plaintiffs' motion to strike Exhibits A and F to the Affidavit of Brian Bowers ("Bowers Affidavit") (Dkt. Nos. 23-1, 23-6), which are the same, previously disclosed Fact Sheets, is denied.  Further, in light of Plaintiffs' failure to contest the testimony contained in the Bowers Affidavit, which states that interest or fees were not accruing, and Plaintiffs' representation that the accuracy of Defendant's collection letters is not at issue, any failure to disclose the Fact Sheets was harmless.  *See* Fed. R. Civ. P. 37(c)(1) (providing that preclusion sanction is unwarranted if any failure to disclose is harmless).

10

Defendant's collection letters is not at issue" and it is "irrelevant" whether or not their debts in fact accrued interest and fees after being referred to FRS to collection.

Second, the statements of the amount due are not misleading or deceptive. By their terms, the letters neither state nor imply that interest or fees are accruing. To the contrary, each letter contains three payment coupons, presumably to accompany payments over time, and each payment coupon states the same static amount due without any increase for the passage of time. Similarly, each successive letter states the same amount due as the prior letter. If anything, the letters imply that interest was not accruing. This is not a situation where the consumer was invited to call to obtain the most current balance, which might suggest that interest was accruing. *Cf. Chuway v. Nat'l Action Fin. Servs., Inc.*, 362 F.3d 944, 947–49 (7th Cir. 2004) (finding misleading a letter that identified the credit card company as a creditor, stating the balance and providing a phone number to "[t]o obtain [the] most current balance information").

The letters are not misleading to the least sophisticated consumer, who (i) might not understand or even consider the concept of interest and when it accrues; (ii) could reasonably take the language at face value as to the amount owed; or (iii) might infer from the unchanging amount in each of the coupons and successive letters that interest was not accruing. Only a consumer in search of an ambiguity, and not the least sophisticated consumer relevant here, would interpret the letters to mean that interest was accruing. Because the letters are not susceptible to more than one reasonable interpretation on the subject of interest or the amount due, they are not false, deceptive or misleading in this regard.

Plaintiffs rely on *Avila*, but that case is distinguishable. In that case, the plaintiff alleged that while "interest was accruing daily at a rate equivalent to 500% per year," the collection notices failed to "disclose that the balance might increase due to interest and fees." *See Avila*,

11

817 F.3d at 74.  The Second Circuit held the plaintiff stated a claim because a reasonable consumer could "be misled into believing that she could pay her debt in full by paying the amount listed on the notice" when interest and fees were continuing to accrue daily after receipt of the notice.  *Id.* at 76.  But such confusion is not possible here:  Plaintiffs adduce no evidence that paying the stated balance due in their respective letters would not satisfy their debts.  As the court in *Dick v. Enhanced Recovery Co.* stated, the holding in "[*Avila*] -- that it is misleading for a debt collector to list the amount owed without disclosing the fact that said amount is increasing -- does not support [the plaintiff's] argument that it is misleading to list the amount owed without affirmatively noting that the amount is *not* increasing."  No. 15 Civ. 2631, 2016 WL 5678556, at *5 (E.D.N.Y. Sept. 28, 2016).

### 2.   Count Two -- Statements Regarding Tax Consequences

FRS's statement in the Taylor letters that the "settlement" for less than the balance due "may have tax consequences" does not violate § 1692e as a matter of law.  First, as Plaintiffs concede, the statement accurately states the law; a settlement would constitute a discharge of indebtedness, which the tax payer may be required to report regardless of amount, and which may result in taxable income.  *See* 26 U.S.C. § 61(a)(12); IRS Pub. No. 4731, *Screening Sheet for Nonbusiness Credit Card Debt Cancellation* (2015), *available at* https://www.irs.gov/pub/irs-pdf/p4731.pdf.  Second, courts that have addressed identical language to that in FRS's letters have found the statement to be accurate, and held it to be otherwise non-actionable under § 1692e.  *See Remington v. Fin. Recovery Servs., Inc.*, No. 16 Civ. 865, 2017 WL 1014994, at *4 (D. Conn. Mar. 15, 2017); *Everett v. Fin. Recovery Servs., Inc.*, No. 16 Civ. 1806, 2016 WL 6948052, at *2, *6 (S.D. Ind. Nov. 28, 2016); *see also Dunbar v. Kohn Law Firm SC*, No. 17 Civ. 88, 2017 WL 1906748, at *5–6 (E.D. Wis. May 8, 2017) (citing *Remington* and *Everett* and

holding that the statement "[t]his settlement may have tax consequences" did not violate § 1692e).

Plaintiffs argue that the statement is misleading because the least sophisticated consumer could believe that it suggests FRS will report the settlement to the IRS. But the letters are silent as to FRS's reporting obligation or whether FRS will contact the IRS if Taylor accepts the settlement. The cases Plaintiffs cite are inapposite because they involve collection notices that explicitly refer to the debt collectors' reporting obligations. *See Balon v. Enhanced Recovery Co.*, 190 F. Supp. 3d 385, 387, 392 (M.D. Pa. 2016) (denying motion to dismiss FDCPA claim based on letter stating "any indebtedness of $600.00 or more, which is discharged as a result of a settlement, may be reported to the IRS as taxable income" where the cancellation of indebtedness was less than $600); *Velez v. Enhanced Recovery Co.*, No. 16 Civ. 164, 2016 WL 1730721, at *1–3 (E.D. Pa. May 2, 2016) (same). In this case, "[n]ot even the least sophisticated consumer would interpret the statement here to deceptively suggest that defendants were required to or intended to contact the IRS." *Remington*, 2017 WL 1014994, at *4. Thus, the statement is not misleading under § 1692e as a matter of law. Further, to the extent Count Two alleges violations based on the specific subsections of § 1692e, namely, § 1692e(2)(A), (5) and (10), it fails as a matter of law because Plaintiffs make no argument or adduce any evidence regarding why the letters violate these specific subsections.

## IV. CONCLUSION

For the foregoing reasons, summary judgment is GRANTED in favor of FRS. Plaintiffs' motion to strike is DENIED as moot except as it applies to Exhibits A and F to the Bowers Affidavit, as to which the motion to strike is denied on the merits.

The Clerk of Court is respectfully directed to close the motion at Docket Numbers 21 and 31 and this case.

Dated: May 18, 2017
       New York, NY

                                        **LORNA G. SCHOFIELD**
                                        **UNITED STATES DISTRICT JUDGE**